IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KING C. LUM, | ) | Civ. No. 06-00068 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| vs. | ) | MOTION FOR PARTIAL SUMMARY |
| | ) | JUDGMENT |
| KAUAI COUNTY COUNCIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I.      INTRODUCTION.

        Plaintiff King C. Lum ("Lum") has filed his Fourth

Amended Complaint[1] ("Complaint") against Defendants County of

Kauai ("the County"), Kauai County Council ("the Council"), Bryan

Baptiste ("Mayor Baptiste"), Michael H. Tresler ("Director

Tresler"), and Leon Gonsalves, Sr.[2]  In the Complaint, Lum

asserts the following claims:  (1) discrimination under Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and

Haw. Rev. Stat. § 378-2 (Count 1); (2) violation of 42 U.S.C.

_____

        [1] Lum filed the Third Amended Complaint on December 14,
2006.  At the May 7, 2007, hearing on this matter, the court, for
reasons stated at the hearing, ordered Lum to file a Fourth
Amended Complaint, which was to be identical to the Third Amended
Complaint except for its title, no later than May 8, 2007.  At
the hearing, the court also deemed all moving papers filed after
December 14, 2006, to relate to the Fourth Amended Complaint.

        On May 8, 2007, Lum did file the Fourth Amended
Complaint.  As ordered earlier, the present motion and papers
relate to the Fourth Amended Complaint.

        [2] Lum sues Baptiste, Gonsalves, and Tresler in their
individual and official capacities.

§ 1981 (Count 2); (3) civil conspiracy to discriminate under 42 U.S.C. §§ 1981 and 1985 (Count 3); (4) violation of his procedural due process rights and of "the public policy of the State of Hawaii," and "breach of [Lum's] employment contract" (Count 4); and (5) violation of the Hawaii Whistleblowers' Protection Act, Haw. Rev. Stat. § 378-62 (Count 5).  Lum prays for declaratory and injunctive relief, as well as compensatory and punitive damages.

On December 22, 2006, the County, the Council, Baptiste, and Tresler (collectively, "Defendants") moved for partial summary judgment on Lum's claim for violation of his procedural due process rights.[3]  The court held a hearing on Defendants' motion on March 5, 2007, at which time the court requested supplemental briefing on whether Lum had a property interest in his employment entitling him to procedural due process.  The court held another hearing on May 7, 2007, and thereafter requested further supplemental briefing.  This order addresses issues raised in both the original and supplemental papers.

Regarding Lum's procedural due process claim, Defendants argue that Lum had no property interest in his job because his contract was void.  Defendants also contend that,

---

[3] Defendant Leon Gonsalves, Sr., neither moved for summary judgment nor joined in the present motion.

2

because Lum was an at-will employee, he could not have had any property interest in his employment.  Alternatively, they argue that, even if Lum had a property interest in his employment, his "resignation from employment is a voluntary relinquishment of any property interests he might have had."  In response, Lum argues that he had a property interest in his employment because "the wrongdoing alleged in the instant case was that of a third-person" and because he "had been working for several years as the Kauai Police Chief."  Regarding his resignation, Lum argues that he was constructively discharged.

The court grants summary judgment on Lum's procedural due process claim.  Because Lum's contract is void, it created no property interest in his employment.

Defendants' supplemental papers clarify that they seek summary judgment on the remaining claims in Count 4.  Because those claims are based on the cancellation of Lum's void employment contract, and because Lum has had ample opportunity to address Defendants' arguments, the court grants summary judgment in favor of Defendants on those claims as well.

II.      LEGAL STANDARD.

Summary judgment shall be granted when

the pleadings, depositions, answers to
interrogatories, and admissions on file,
together with the affidavits, if any, show
that there is no genuine issue as to any
material fact and that the moving party is
entitled to a judgment as a matter of law.

3

Fed. R. Civ. P. 56(c); see also Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party may not rely on the mere allegations in the pleadings and instead must "set forth specific facts showing that there is a genuine issue for trial."  Porter v. Cal. Dep't of

4

Corr., 419 F.3d 885, 891 (9th Cir. 2005).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

III.    BACKGROUND FACTS.

Lum joined the Kauai Police Department ("KPD") in 1983. Declaration of King C. Lum (2/13/2007) ("Lum Decl'n") ¶ 2.  In March 2004, Lum, then a KPD lieutenant, applied to be the Chief of Police.  Id. ¶ 4.  On April 16, 2004, the Kauai Police Commission ("the Commission") appointed Lum Interim Chief of KPD for a term beginning on May 1, 2004, until September 29, 2004,

when he was appointed Chief of Police.  Id. ¶¶ 5-6.  Michael

Ching ("Commissioner Ching") was a member of the Commission that

appointed Lum Chief of Police.  Ex. A (attached to Motion) ¶ 1.

Lum's employment contract with the Commission provided

for a five-year term as the Chief of Police, to "end at midnight

on September 28, 2009."  Ex. A (attached to Opp.) at 1; Lum

Decl'n ¶ 7.  The employment contract also stated that Lum

may be terminated as follows:

(a)  Pursuant to Charter:  By the Commission
     at any time prior to the expiration of
     the term of your employment under this
     agreement and after being given a
     written statement of the charges against
     you and a hearing before the Commission
     pursuant to Section 11.04 of the
     Charter.  If you are terminated in this
     manner, all compensation to which you
     are entitled shall cease on the
     effective date of the termination;
     provided, however, that you will be
     entitled to receive all vested and/or
     accrued benefits for which you are
     eligible on the date of termination.

(B)  At expiration of term:  Unless extended
     by a separate written agreement, K.C.
     Lum's employment hereunder shall be
     terminated at the expiration of the term
     hereof.

Ex. A (attached to Opp.) at 1-2 (emphases in original).

Some time before February 23, 2006, the County

appointed a hearing officer to hear and issue findings of fact

and conclusions of law on whether Commissioner Ching had violated

the Kauai County Charter and the Kauai County Code of Ethics in

6

approving Lum to be the Chief of Police.  See generally Ex. A
(attached to Motion).

On February 23, 2006, the hearing officer issued his
findings and recommendations.  Id. at 23.  The hearing officer
found that Commissioner Ching "actively solicited support for Lum
from [the State of Hawaii Organization of Police Officers
('SHOPO')]" and that he "used his position to secure an
unwarranted advantage and treatment for [Lum] over the other
candidates for Chief of Police."  Id. at 20; Ex. D (attached to
Motion) at 2.  In light of those findings, the hearing officer
concluded, "In nominating, advocating for and voting for [Lum] as
Interim Chief, [Commissioner Ching] used his official position
for the benefit of [Lum] and thereby violated the Kauai County
Code of Ethics under the Kauai County Charter, Article XX,
Section 20.02E and the Kauai County Code, Chapter 3, Article I,
section [3]-1.6 ('Fair Treatment')."[4]  Ex. A (attached to Motion)

_____

[4] Section 20.02E of Article XX, Code of Ethics, Kauai
County Charter provides:  "No officer or employee of the county
shall . . . [u]se his official position to secure a special
benefit, privilege or exemption for himself or others."  At the
May 7, 2007, hearing, Lum argued that Commissioner Ching violated
section 20.03, but the hearing officer did not find that Ching
violated that section.  See Ex. A (attached to Motion) at 21.

Chapter 3, Article I, section 3-1.6 of the Kauai County
Code provides:  "No councilman or employee of the County shall
use or attempt to use his official position to secure or grant
unwarranted privileges, exemptions, advantages, contracts, or
treatment for himself or others . . . ."

at 21.  The hearing officer recommended that "this matter be referred to the County Council for appropriate action."  Id.

On March 23, 2006, based on the hearing officer's findings and recommendations, the Kauai Board of Ethics ("Board of Ethics") recommended to the Council that "the Director of Finance void the County's contract with [Lum]."  Ex. G (attached to Motion) at 1.  On April 12, 2006, the Council "accepted and ratified the recommendations of the [Board of Ethics] regarding . . . [t]he cancellation of [Lum's] contract, in accordance with Section 3-1.11(a) and (b) of the Kauai County Code."  Ex. H (attached to Motion) at 1.  Section 3-1.11 of the Kauai County Code provides:

> Sec. 3-1.11 Violation; Penalties.
>
> (a)  In addition to any other penalty provided by law, any contract entered into by the County in violation of this Article is voidable on behalf of the County at the option of the Director of Finance, provided that in any action to avoid a contract pursuant to this Section the interests of third parties who may be damaged thereby shall be taken into account, and the action to void the transaction is initiated within sixty (60) days after the determination of a violation under this Article.  The County Attorney shall have the authority to enforce this provision.
>
> (b)  Any favorable county action obtained in violation of any of the standard for councilmen or employees is voidable in the same manner as voidable contracts as provided for under Section 3-1.11(a); and the County by the County Attorney may pursue all legal and equitable remedies available to it.

8

On April 27, 2006, pursuant to the Council's recommendation and section 3-1.11's requirement that the interests of third parties be considered, the Director of Finance, Director Tresler, sent a letter to Lum asking him to "please provide me with any facts, documents, reasons and/or justifications explaining why I should <u>not</u> cancel your employment agreement <u>within seven (7) calendar days from the date of this letter</u>." Ex. I (attached to Motion) at 2 (emphases in original). On May 4, 2006, Lum's attorney sent a letter to Director Tresler, requesting that Lum "be given a hearing to afford him his due process rights as required by the Fifth and Fourteenth Amendments to the U.S. Constitution." Ex. J (attached to Motion) at 2. Via letter dated May 12, 2006, Director Tresler's attorney told Lum:

> [W]ith respect to your request for a hearing, KCC Section 3-1.11(a) provides in relevant part that, "in any action to avoid a contract pursuant to this section the interests of third parties who may be damaged thereby shall be taken into account." KCC Section 3-1.11(b) does not provide any requirements for a hearing as it relates to an action to cancel a contract made pursuant to this section. This section requires that the interests of Chief Lum be taken into account.
>
> Director Tresler will provide Chief Lum with an opportunity to make a private, transcribed oral presentation to him as to how his interest will be affected by the potential cancellation of the employment. We would request that this presentation be made within <u>seven (7) calendar days from the date of this letter</u>. However, it should be understood that this oral presentation will

> not entail the examination and/or cross-
> examination of any witnesses.  Director
> Tresler will listen to Chief Lum's statement,
> but will not comment nor engage in any
> discussion regarding the substance of his
> claims.  As Director Tresler will be
> accompanied by counsel, Chief Lum may be
> represented by counsel at the presentation.

Ex. K (attached to Motion) at 2.  In response, Lum "decline[d] to

make a personal appearance before [Director Tresler]."  Ex. L

(attached to Motion) at 2.

On May 30, 2006, Director Tresler's attorney sent a

letter to Lum's attorney, informing Lum that, after "fully

consider[ing] Lum's interests," Director Tresler concluded that

"Lum's Employment Agreement is voidable."  Ex. B (attached to

Opp.) at 2.  The letter also informed Lum of Director Tresler's

"decision to cancel [Lum's] October 15, 2004 Employment Agreement

. . . with the [KPD] pursuant to Sections 3-1.11(a) and (b) of

the Kauai County Code."  Ex. B (attached to Opp.) at 1.  The

letter stated:

> In considering the interests of Chief
> Lum, Director Tresler learned that a
> lieutenant's position is available within the
> [KPD].  We understand that Chief Lum may be
> reinstated in that position.  In order to
> avoid a gap in his employment record with the
> County, which gap might adversely [a]ffect
> his retirement or employment status, Director
> Tresler will actually cancel the contract on
> June 7[, 2006].  During this one week period,
> if your client is inclined to return to his
> prior position of lieutenant, please have him
> make an appointment to see Gary Heu, the

> Mayor's executive assistant, so they can
> discuss his re-employment.

Ex. B (attached to Opp.) at 3.

On May 31, 2006, Lum sent a letter to the Commission

stating:

> My employment contract will be cancelled on
> June 8, 2006 by [Director Tresler]. . . .  A
> telephone conversation on May 31, 2006 with
> Gary Heu, the Mayor's Executive Assistant,
> revealed that I will no longer be considered
> an employee of the County on June 8, 2006.  I
> must request reinstatement to my former rank
> of lieutenant before I can continue to be an
> employee of the County.  When I asked Heu
> about the legality of the action, he stated,
> "the attorneys just have to beef it out."
>
> As such, I will retire from police
> service at the close of business on June 7,
> 2006.

Ex. O (attached to Motion) at 2.

IV.     <u>ANALYSIS.</u>

A.     <u>Lum's Procedural Due Process Claim.</u>

Defendants argue that Lum's "employment agreement was

void from the outset as a matter of law because it was entered

into as the result of a tainted and flawed selection process."

Defendants' 3/15/2007 Supp. at 6.  Defendants contend, "An

employment contract that is null and void is incapable of

creating a property interest since such a contract cannot

conceivably give rise to a legitimate expectation of continued

employment."  Motion at 11.  Defendants assert that, because

Lum's "employment contract was determined to have been entered

into in violation of the Code of Ethics," Lum had "no property

interest worthy of protection by the Due Process Clause."  Motion

at 15.  Lum responds that he had a property interest in his

employment because "the wrongdoing alleged in the instant case

was that of a third-person" and because he "had been working for

several years as the Kauai Police Chief."  Lum's 4/18/2007 Supp.

Opp. at 7.  The court agrees with Defendants that Lum had no

property interest in his employment.

        The Fourteenth Amendment to the United States

Constitution provides, "No State shall . . . deprive any person

of life, liberty, or property, without due process of

law . . . ."  The Ninth Circuit says, "A procedural due process

claim has two distinct elements:  (1) a deprivation of a

constitutionally protected liberty or property interest, and

(2) a denial of adequate procedural protection."  Brewster v. Bd.

of Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 982

(9th Cir. 1998).  Before examining whether Lum was deprived of a

property interest in his position as Chief of Police without due

process, the court must first determine whether Lum indeed had a

protected property interest.

        "Property interests are not created by the

Constitution."  Id. (citing Bd. of Regents v. Roth, 408 U.S. 564,

577 (1972)).  "Rather, they are created and their dimensions are

defined by existing rules or understandings that stem from an

12

independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Id. (citing Roth, 408 U.S. at 577). "In order to possess a property interest in a benefit, an individual must have more than 'an abstract need or desire for it' or 'a unilateral expectation of it.'" Id. Rather, an individual must possess "a legitimate claim of entitlement to it." Id.

Although Hawaii courts have not addressed the precise issue before this court, other courts that have addressed the issue hold that employment contracts or appointments that violate state or county law are void as a matter of law and do not create property interests in employment. For example, in Bailey v. City of Lawrence, Indiana, 972 F.2d 1447, 1448 (7th Cir. 1992), the plaintiff, who had been appointed to the Lawrence Police Department the day before his thirty-sixth birthday, was terminated because Illinois law prohibited appointments "after the person has 'reached thirty-six (36) years of age.'" Id. The district court concluded on summary judgment that the plaintiff had no property interest in his employment, as the plaintiff "had been ineligible for appointment to the police force because Indiana had adopted the 'coming of age' rule under which [the plaintiff] had 'reached thirty-six (36) years of age' the day before his birthday." The appointment was therefore void. Id.

13

On appeal, the Seventh Circuit acknowledged, "If [the plaintiff's] appointment was invalid, then he had no property interest and therefore had no right to due process before being discharged."  Id. at 1449.  However, because the Seventh Circuit found that the plaintiff "had not reached thirty-six (36) years of age" prior to his appointment, the court ultimately vacated the district court's decision that the appointment was void.  Id. at 1452.

In another case originating in Illinois, Shlay v. Montgomery, 802 F.2d 918, 919 (7th Cir. 1986), the plaintiff alleged that he had been wrongfully deprived of a property interest in continued employment as a Chicago assistant corporation counsel.  The plaintiff was terminated from his job because he did not live in Chicago, a condition of employment. Id.  The district court granted summary judgment to the defendants, and the plaintiff appealed.  Id.  The Seventh Circuit concluded that the employment contract was "in contravention of Illinois law at the time he was hired."  Id. at 921-22.  The court said, "[C]ontracts which are in violation of law are null and void."  Because "contracts which are null and void are incapable of creating property interests since such contract cannot conceivably give rise to a legitimate expectation of continued employment," the plaintiff's employment contract did not create a protected property interest.  Id.

Similarly, in <u>Walters v. Village of Colfax</u>, 466 F. Supp. 2d 1046, 1048-49 (C.D. Ill. 2006), the plaintiff had a ten-year contract for employment as Chief of Police.  The plaintiff was eventually terminated and sued village officials, claiming that they had deprived him of his employment without procedural due process.  <u>Id.</u> at 1051.  The defendants moved for summary judgment on the ground that no property interests arose from the employment contract because "the duration term in the 2002 contract violates Village Ordinances and municipal law."  <u>Id.</u> The district court agreed with the defendants that, because the contract's duration was contrary to municipal law, the contract was "void from the moment of execution."  <u>Id.</u> at 1056.  The "completely void" employment contract "did not exist and cannot provide [the plaintiff] with a protectable property interest." <u>Id.</u> at 1057.

Other jurisdictions agree that void contracts create no protected property interests.  In <u>City of Beaumont v. Spivey</u>, 1 S.W.3d 385, 387 (Tex. Ct. App. 1999), the plaintiff was hired by the Beaumont Police Department, having scored "the second highest grade on the exam."  After investigating allegations that the plaintiff "obtained a copy of the entry level exam from [a] former Beaumont police officer" and concluding that the plaintiff had studied a copy of the actual examination before taking the test, the city ended the plaintiff's employment.  <u>Id.</u> at 388.

The Texas Court of Appeals upheld "the factual sufficiency of the trial court's finding that Spivey was given the actual exam prior to taking it and that he cheated on the examination." Id. at 395.  Because the plaintiff's actions were contrary to state law, which required that his appointment be "based on a competitive examination," the court concluded that "his appointment as a police officer was not in substantial compliance with [state law] and is void ab initio." Id. at 395-96.  As a result, he had no property rights in his employment under state law.  Id. at 396.

Walsh v. Bollas, 612 N.E.2d 1252, 1254 (Ohio App. 1992), also holds that no property interest arises from a void contract.  In Walsh, the plaintiff appealed after the court of common pleas declared his employment contract void.  The plaintiff had been hired by the sheriff's office, while his father-in-law was the county sheriff.  Id. at 1253.  State law "prohibited a county sheriff from authorizing a contract for employment of his family member as a public employee."  The Ohio Court of Appeals affirmed the lower court's decision that the plaintiff's contract was void.  Id. at 1255-56.  Because "no rights may arise from an illegal contract," the plaintiff was not entitled to procedural guarantees.  Id. at 1256.

Lum does not dispute that employment contracts or appointments that are contrary to state or municipal law are void and can create no property interest in employment.  Instead, Lum

16

argues that he had a property interest in his employment because "the wrongdoing alleged in the instant case was that of a third-person" and because "he had been working for several years as the Kauai Police Chief."  Lum's 4/18/2007 Supp. Opp. at 2-7 (citing Berns v. Civil Serv. Comm'n, 537 F.2d 714 (2d Cir. 1976); Hewitt v. D'Ambrose, 418 F. Supp. 966 (S.D.N.Y. 1976); In re Petitioner N, 139 Misc. 2d 634 (N.Y. Sup. Ct. 1987)).  Each case Lum relies on is distinguishable from the present case.

In Berns, 537 F.2d at 716, and Hewitt, 418 F. Supp. at 969, the employees were found to have property interests in their employment because they had satisfactorily completed their six-month probationary periods.  Thus, under New York law, the employees became "permanent employees" and were entitled to procedural due process.  Berns, 537 F. 2d at 716 ("Under New York law, Berns achieved [a property interest in her job] when she was retained beyond her six month probationary period."); Hewitt, 418 F. Supp. at 969 ("Hewitt, having satisfactorily completed his probationary period and having achieved 'permanent' employee status, was entitled to all of the procedural safeguards guaranteed by the fourteenth amendment.").  In the present case, however, nothing in the record suggests that Lum was working under any provision or condition, such as completion of a probationary period, that transformed him into someone with a protected property interest in his job.  Similarly, In re

17

Petitioner N, 139 Misc. 2d at 635, is distinguishable because the New York Supreme Court was faced with determining whether property rights arose from a contract for the sale of real property, not from an employment contract.  The court is therefore unpersuaded by any of the cases Lum cites.

The hearing officer concluded that Commissioner Ching violated the Kauai County Code and the Kauai County Code of Ethics by "nominating, advocating for and voting for [Lum] as Interim Chief."  Ex. A (attached to Motion) at 21.  Based on the hearing officer's findings and recommendations, the Board of Ethics recommended to the Council that Director Tresler void Lum's employment contract.  Ex. G (attached to Motion) at 1.  The Council, having accepted and ratified the Board of Ethics' recommendations, referred "the matter of the cancellation of [Lum's] employment contract to" Director Tresler."  Ex. H (attached to Motion) at 1-2.  Pursuant to section 3-1.11(a) of the Kauai County Code, Director Tresler concluded, after fully considering Lum's interests, that Lum's employment contract was "voidable."  Ex. B (attached to Opp.) at 2-3.

Although, given Lum's notice of resignation, Director Tresler did not actually declare the contract void or cancel the employment contract, Lum's appointment and contract became void as a matter of law once it was determined that Lum had become the Chief of Police via a process that violated County law.  See

18

Bailey, 972 F.2d at 1448-49; Shlay, 802 F.2d at 921-22; Walters, 466 F. Supp. 2d at 1057; Walsh, 612 N.E.2d at 1255-56; Spivey, 1 S.W.3d at 395-96.  To conclude otherwise would allow Lum to create a property interest simply by resigning before a formal declaration that the contract was void (not just "voidable") had occurred.  This would make no sense.

Hawaii courts recognize that a void contract is "no contract at all."  Standard Finance Co. v. Ellis, 3 Haw. App. 614, 618, 657 P.2d 1056, 1059 (Haw. App. 1983).  Because void contracts create no property interests, no property interest in employment arose from Lum's void contract.  See Bailey, 972 F.2d at 1449; Shlay, 802 F.2d at 922; Walters, 466 F. Supp. 2d at 1056; Walsh, 612 N.E.2d at 1256; Spivey, 1 S.W.3d at 396.  The court therefore grants summary judgment in favor of Defendants on Lum's procedural due process claim.[5]

B.   Lum's Remaining Claims in Count 4.

Although Defendants' original motion sought summary judgment on only the due process claim in Count 4, their supplemental papers clarify that they seek "summary judgment on the entire Fourth Claim for Relief."  Defendants' 4/9/2007 Supp. at 2.  Defendants posit, "It is undisputed that the Fourth Claim

---

[5] Because the court concludes that Lum had no property interest in his employment as Chief of Police, the court need not and does not address Defendants' alternative arguments that Lum was an at-will employee or that Lum's resignation negated any property interest in his employment.

For Relief is based entirely on the operative facts pertaining to [Lum's] allegations concerning the cancellation of his employment agreement."  Defendants' 4/9/2007 Supp. at 19.  Defendants therefore contend, "if this Honorable Court finds that partial summary judgment on [Lum's] due process claim is proper, then partial summary judgment should also be granted as to the entire Fourth Claim For Relief."  The court agrees.

Count 4 asserts three claims:  "denial of due process and attempt to violate the public policy of the State of Hawaii and a breach of [Lum's] employment contract with County of Kauai."  Complaint ¶ 65.  The Complaint makes clear that all claims in Count 4 are based on the cancellation of Lum's employment contract.  Id. ¶¶ 47-49, 65.  Because the contract is void, any argument that its cancellation violated public policy or breached the contract fails as a matter of law.  The court therefore grants summary judgment on the remaining claims in Count 4.

V.          <u>CONCLUSION.</u>

The court grants summary judgment in favor of moving Defendants on Count 4.  All other claims remain for future adjudication.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 18, 2007.

_Susan Oki Mollway_
Susan Oki Mollway
United States District Judge

<u>**Lum v. Kauai County Council et al.**</u>**, Civ. No. 06-00068 SOM/BMK; ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT.**