IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KING C. LUM, | ) | Civ. No. 06-00068 SOM/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING THE MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT FILED BY |
| | ) | DEFENDANT LEON GONSALVES, SR. |
| KAUAI COUNTY COUNCIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT
FILED BY DEFENDANT LEON GONSALVES, SR.

I.      INTRODUCTION.

This case asserts race-based employment discrimination. This court previously granted summary judgment against Plaintiff King C. Lum on the Fourth Claim for Relief in his Fourth Amended Complaint.  The court subsequently granted summary judgment in favor of Michael H. Tresler, leaving for further adjudication the First, Second, Third, and Fifth Claims for relief, to the extent those claims were asserted against Defendants County of Kauai, Kauai County Council, Bryan Baptiste, and Leon Gonsalves, Sr.

Gonsalves now moves for summary judgment on all remaining claims against him in the Fourth Amended Complaint. Those claims allege violations of Title VII, Haw. Rev. Stat. §§ 378-2 and 378-62, and 42 U.S.C. §§ 1981 and 1985.  This court rules in Gonsalves's favor on all counts.

II.        <u>LEGAL STANDARD.</u>

The summary judgment standard was set forth in this court's order of May 18, 2007.  That standard is incorporated herein by reference.

III.       <u>BACKGROUND FACTS.</u>

The factual background was also set forth in this court's order of May 18, 2007.  That factual background is incorporated by reference and is supplemented herein as necessary.

In brief, Lum, who is of Chinese ancestry, was the former Chief of Police for the County of Kauai.  Gonsalves was a member of the police commission that, in 2004, appointed Lum to a five-year term, although Gonsalves opposed Lum's appointment.  Lum's appointment was rescinded after the Kauai County Council adopted a recommendation to cancel the contract based on findings that another commissioner had improperly influenced the process of selecting the chief.  Lum could have remained on the police force but instead resigned.

While still employed by the County, Lum had complained that Gonsalves had used a racially derogatory term by referring to him in an email as "Hop Sing."  That email figures prominently in Lum's present discrimination claims.

IV.      <u>ANALYSIS.</u>

    A.   <u>The First and Second Claims for Relief.</u>

        1.   There is No Individual Liability for the
           <u>Alleged Title VII Violations.</u>

The Fourth Amended Complaint's First Cause of Action

asserts that Gonsalves violated Title VII, which provides:

> (a)  It shall be an unlawful employment
> practice for an employer --
>
> (1)  to fail or refuse to hire or to
> discharge any individual, or otherwise to
> discriminate against any individual with
> respect to his compensation, terms,
> conditions, or privileges of employment,
> because of such individual's <u>race</u>, color,
> religion, sex, or national origin.

42 U.S.C. § 2000e-2 (emphasis added).

The Supreme Court has stated that an employer violates

Title VII when the workplace is permeated with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and

create an abusive or hostile working environment.  <u>See</u> <u>Oncale v.</u>

<u>Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 78 (1998); <u>see also</u>

<u>Montero v. AGCO Corp.</u>, 192 F.3d 856, 860 (9th Cir. 1999).

Although Gonsalves did not argue in his summary

judgment motion that he cannot be held individually liable for

the alleged Title VII violations asserted in Lum's First Claim

for Relief, this court, in its usual prehearing inclinations,

asked Lum to come to the hearing on the motion prepared to

discuss whether Gonsalves could be held individually liable for a violation of Title VII.  At the hearing, Lum conceded that he lacks a viable Title VII claim against Gonsalves.  <u>See</u> <u>Miller v. Maxwell's Int'l. Inc.</u>, 991 F.2d 583, 587-88 (9th Cir. 1993) ("Congress did not intend to impose individual liability on employees . . . . If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees"); <u>Chenoweth v. Maui Chem. & Paper Prods., Inc.</u>, 2007 WL 2479297, *2 (D. Haw. 2007) ("The Ninth Circuit has conclusively determined that Title VII does not impose individual liability on employees, supervisory or otherwise, which this Court has recognized."); <u>see also</u> 42 U.S.C. § 2000e(b) (defining "employer," for Title VII purposes, as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person").  Gonsalves cannot be individually liable Under Title VII.

## 2.   <u>Haw. Rev. Stat. § 378-2.</u>

The First Cause of Action in the Fourth Amended Complaint also asserts violations of section 378-2 of the Hawaii Revised Statutes.  Lum fails show that he could support a section 378-2 claim.

            a.    Gonsalves is Not Liable for Alleged
                  Violations of Haw. Rev. Stat.
                  § 378-2(1)(A).

      Lum alleges that Gonsalves has discriminated against

him because of his race.  See Fourth Amended Complaint (May 8,

2007) ¶ 25 (alleging that Gonsalves sent an email in which

Gonsalves called Lum "Hop Sing," an alleged racial slur).  Lum

argues that Gonsalves created a hostile work environment through

the use of the term "Hop Sing" in an email and subsequently filed

complaints against Lum with the County of Kauai Board of Ethics

and the State of Hawaii's Attorney General's office.  Lum appears

to be asserting a violation of section 378-2(1)(A) of the Hawaii

Revised Statutes.[1]

      In relevant part, section 378-2 provides:

      It shall be an unlawful discriminatory
      practice:

      (1) Because of race, sex, sexual orientation,
      age, religion, color, ancestry, disability,
      marital status, or arrest and court record:

            (A) For any employer to refuse to hire
      or employ or to bar or discharge from
      employment, or otherwise to discriminate
      against any individual in compensation or in
      the terms, conditions, or privileges of
      employment;

─────────────────────

      [1] Lum is not arguing that Gonsalves caused him to
suffer a tangible adverse employment action based on race.  This
court has already determined that Lum's employment contract was
void.  As discussed below, Lum also does not contest Gonsalves's
assertion that Gonsalves played no role in the County of Kauai's
or Tresler's decision to declare Lum's contract void.

(B) For any employment agency to fail or refuse to refer for employment, or to classify or otherwise to discriminate against, any individual;

(C) For any employer or employment agency to print, circulate, or cause to be printed or circulated any statement, advertisement, or publication or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification, or discrimination;

(D) For any labor organization to exclude or expel from its membership any individual or to discriminate in any way against any of its members, employer, or employees; or

(E) For any employer or labor organization to refuse to enter into an apprenticeship agreement as defined in section 372-2; provided that no apprentice shall be younger than sixteen years of age;

(2) For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part;

(3) For any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so . . . .

No Hawaii appellate court has expressly addressed the issue of whether there is individual liability under section 378-2. By contrast, the judges of this district court have, on

6

numerous occasions, examined the issue of individual liability under sections 378-(2)(1) and 378-2(2), both of which use the term "employer" with the same definition.[2]  This district's judges are split on the issue.

### *Past Decisions in this District.*

At this point, Judge Ezra and this judge have ruled that there is no individual liability under section 378-2, except under subsection 378-2(3), which concerns aiding, abetting, inciting, compelling, or coercing discrimination.  See, e.g., Lavarias v. Hui O'Kakoa Security, 2006 WL 3422256 (D. Haw. Nov. 28, 2006) (Ezra, J.); Maizner v. Haw. Dept. of Educ., 405 F. Supp. 2d 1225, 1235 (D. Haw. 2005) (Mollway, J.); White v. Pac. Media Group, 322 F. Supp. 2d 1101, 1114 (D. Haw. 2004)(Ezra, J); Luzon v. Atlas Ins. Agency, 284 F. Supp. 2d 1261, 1265 (D. Haw. 2003) (Mollway, J.); Mukaida v. Hawaii, 159 F. Supp. 2d 1211, 1226 (D. Haw. 2001) (Mollway, J.).  But see Black v. Correa, 2007 WL 3195122, *18 (D. Haw. Oct. 30, 2007) (Ezra, J.) (finding individual liability under section 378-62, while not revisiting rulings regarding section 378-2).

Judges J. Michael Seabright, Alan C. Kay, and Samuel P. King have determined that section 378-2 does indeed impose

---

[2] The issue seems an appropriate one to certify to the Hawaii Supreme Court, but no party has moved for certification. Indeed, Lum, in an October 31, 2007, letter to the court, expressly declines to seek certification, presumably in the interest of keeping his trial date.

individual liability.  See, e.g., Hale v. Haw. Publ'ns, Inc., 468 F. Supp. 2d 1210, 1229 (D. Haw. 2006) (Kay, J.); Sherez v. State of Haw. Dep't of Educ., 396 F. Supp. 2d 1138, 1145 (D. Haw. 2005) (Seabright, J.); Black v. City & County of Honolulu, 112 F. Supp. 2d 1041, 1056-57 (D. Haw. 2000) (King, J.); accord U.S. ex rel. Lockyer v. Haw. Pac. Health, 490 F. Supp. 2d 1062, 1087 (D. Haw. 2007) (Kay, J.) (applying the same reasoning to a Whistleblower's Protection Act claim under Haw. Rev. Stat. § 378-62 to find individual liability).

A split with her colleagues guarantees that this judge fully revisits the issue each time it comes up in her cases. Despite her great respect for the colleagues who differ with her, this judge adheres to the reasoning in Lavarias, Maizner, White, Luzon, and Mukaida and rules that Gonsalves cannot be held individually liable under section 378-2(1) for the alleged hostile work environment he allegedly created by his using the term "Hop Sing."

Section 378-2(1) prohibits an "employer" from discriminating against a person based on his or her race, as well as other protected categories.  "Employer" is defined as "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States."  Haw. Rev. Stat. § 378-1.

8

The disagreement among the judges in this district centers around whether an individual is an "employer."

In 2000, Judge King ruled in his <u>Black</u> case that an individual employee may be held liable for violations of chapter 378 of the Hawaii Revised Statutes.  See <u>Black</u>, 112 F. Supp. 2d at 1056-57.  In 2001, this court disagreed with <u>Black</u>, ruling that,

> if called upon to decide the issue, Hawaii appellate courts would likely follow the federal courts' reasoning in Title VII cases and rule that, under Chapter 378, unless an individual actually employs someone, the individual cannot be liable for quid pro quo harassment or hostile work environment discrimination because the individual is not an "employer."

<u>Mukaida</u>, 159 F. Supp. 2d at 1227.  The court distinguished <u>Black</u>, noting that <u>Black</u> had heavily relied on <u>Steinberg v. Hoshijo</u>, 88 Haw. 10, 18 n.10, 960 P.2d 1218, 1226 n.10 (1998).  <u>Black</u> indicated that <u>Steinberg</u> provided "a strong indication that the Hawaii Supreme Court would interpret [chapter 378] to hold individual employees liable if the issue were put before it." This court did not read <u>Steinberg</u> the same way, noting that <u>Steinberg</u> only stated, in dicta in a footnote, that the parties did not dispute that Steinberg was an agent of the employing company and therefore an employer for purposes of section 378-1 (defining "employer" to include "any person . . . and any agent of such person, having one or more employees").  Nor was this

9

court persuaded by Black's reliance on two cases decided by the Hawaii Civil Rights Commission, as "courts are not . . . bound by the findings of the HCRC." Takaki v. Allied Mach. Corp., 87 Haw. 57, 68, 951 P.2d 507, 518 (Ct. App. 1998).

As this judge noted in 2003 in Luzon, the Hawaii Supreme Court, subsequent to this court's Mukaida decision,

> addressed a claim against individual employees under chapter 378.  In Schefke v. Reliable Collection Agency, Ltd., 96 Haw. 408, 32 P.3d 52 (Haw. 2001), the Hawaii Supreme Court reversed the trial court's grant of directed verdicts to two individuals who had been sued for retaliating against the plaintiff after he filed an employment discrimination claim.  Schefke permitted claims against one individual who was both an owner and a supervising employee, and against another individual who allegedly incited the alleged retaliation.

Luzon, 284 F. Supp. 2d at 1265.  In footnote 1 of Luzon, this court discussed in detail the Schefke opinion, noting that it was not at all clear that the Hawaii Supreme Court was addressing individual liability under sections 378-2(1) and 378-2(2), rather than under section 378-2(3), which, unlike sections 378-2(1) and 378-2(2), expressly permits claims against individuals.  Id. at 1265 n.1.  In any event, the individual defendants in Schefke had actually been owners of the company.  Id.  Schefke certainly did not hold that a co-worker could be held liable for creating a hostile work environment through the co-worker's use of racial slurs.  Lum's reliance on Schefke is therefore unpersuasive.

10

In 2004, Judge Ezra noted "the divide in opinion within
the district court" and stated that he "ultimately concurs" with
this judge's decision in Luzon.  As Judge Ezra put it, "[T]he
[Hawaii] legislature intended to include employees as personally
liable pursuant to § 378-2(3)[the aiding and abetting provision],
and not personally liable for a violation of the statute in
general."  White, 322 F. Supp. 2d at 1114.  White agreed with
this judge's analysis in Luzon that the Hawaii legislature, had
it intended that individuals be liable under section 378-2(1) or
section 378-2(2), could have easily said so:

> Throughout Chapter 378, the legislature has
> described which behavior, when committed by
> an "employer," "employment agency," or "labor
> organization," constitutes an unlawful
> discriminatory practice.  Only in Section
> 378-2(3) did the legislature include the
> broad reference to "any person whether an
> employer, employee, or not" as being liable
> for the specific action of aiding, abetting,
> inciting, compelling, or coercing
> discriminatory actions.  H.R.S. Chapter 378.
> As the court stated in Luzon, the legislature
> "clearly knew how to include employees within
> a statute's scope" and its failure to do so
> explicitly throughout the statute suggests
> that employees are only held liable for
> infractions of § 378-2(3).  284 F. Supp. 2d
> at 1265 n.1.

White, 322 F. Supp. 2d at 1114.  Notably, Judge Ezra was not
persuaded that the individual defendant in White, who was the
plaintiff's supervisor, should be subjected to individual
liability just because he was in a managerial position.  Id. at
1114.  Judge Ezra recognized that it was theoretically possible

11

that the defendant supervisor could have been an aider or abettor of discrimination and therefore individually liable under section 378-2(3), but Judge Ezra found no facts supporting aiding and abetting liability.  Id. at 1114-15.

In 2005, Judge Seabright disagreed with Judge Ezra's decision in White and with this judge's decisions in Mukaida and Luzon.  Judge Seabright ruled that, under section 378-2(1) and section 378-2(2), "individuals are subject to liability under § 378-2 when they act as agents of an employer."  Sherez, 396 F. Supp. 2d at 1146.  Recognizing that the definition of "employer" in section 378-1 was "not a model of clarity," Judge Seabright examined the use of the term "employer" in chapter 378 and concluded that "Chapter 378 casts liability for employment discrimination broadly."  Id. at 1147.  Judge Seabright reasoned, "It is hard to imagine that the Hawaii legislature meant to impose liability on small employers and on individuals who aid and abet discrimination, yet at the same time meant to immunize the individual agents who actually engage in unlawful discrimination."  Id.

Later that same year, this judge again ruled that sections 378-2(1) and 378-2(2) did not impose individual liability.  In Maizner, 405 F. Supp. 2d at 1235-37, this judge studied the grammar of the definition of "employer" set forth in section 378-1, concluding, contrary to Sherez, that the

12

definition of "employer" did not impose individual liability under section 378-2(1) or section 378-2(2).  This judge reasoned that the participial phrase "having one or more employees" in section 378-1 restrictively modified "any person" such that the definition of "employer" could not be read to include individuals who did not have employees.

Maizner also responded to Judge Seabright's ruling in Sherez:

> Sherez notes, "It is hard to imagine that the Hawaii legislature meant to impose liability on small employers and on individuals who aid and abet discrimination, yet at the same time meant to immunize the individual agents who actually engage in unlawful discrimination." 396 F. Supp. 2d at 1147.
>
> But this judge's reading of section 378-2(2) does not actually "immunize" individual employees; section 378-2(2) simply does not extend to them.  Individual employees remain liable for wrongdoing under other laws that they may have violated. Thus, for example, individuals may be liable for race discrimination under 42 U.S.C. § 1981 even if they are not employers.  An individual employee who assaults another employee based on the victim's sex may face an intentional tort claim.
>
> Section 378-2(3), by contrast, extends aider and abettor liability to individual employees in the same way that it extends such liability to persons outside of the employee-employer relationship.  The legislature could legitimately decide to reserve certain laws for certain relationships, while viewing other laws as properly extending beyond those relationships.  After all, the legislature had to realize that if it drafted section

13

378-2 to allow employees to freely sue each other for employment discrimination, that might not necessarily be employee-friendly. For every plaintiff employee benefitting from such a provision, there would be a corresponding defendant employee, and at least one employee in each such dispute would be at risk of losing.

There is nothing illogical about a legislative decision to address systemic discrimination by passing employment discrimination laws, but not to seek to use those laws to curb individual employees who may be renegades acting badly without an employer's backing.  An employer has power over an employee, and two or more individuals may similarly enjoy power over a single employee.  As aiding or abetting discrimination requires at least two actors, it may present something akin to the systemic imbalance of power that the legislature may have been concerned with in the relationship between employer and employee. . . .

Finally, <u>Sherez</u> takes the position that individual employee liability under section 378-2(2) is consistent with chapter 378's application to employers with one or more employees, in contrast to Title VII's application to employers with fifteen or more employees.  But chapter 378's broad application even to small employers could be said to make individual employee liability an even less necessary remedy than is the case with Title VII.

<u>Id.</u> at 1237-38.

In November 2006, Judge Ezra, in <u>Lavarias</u>, reiterated the position he had taken two years earlier in <u>White</u>, again holding that employees, even if they were supervisors, were not individually liable for violations of section 378-2(2).  <u>See</u> <u>Lavarias</u>, 2006 WL 3422256 at *2.  Laverne Lavarias, a security

guard, had sued George Williams, the person allegedly responsible for the hiring, firing, and training of guards.  See Complaint, Civil No. 06-00481 DEA/LEK (Sept. 6, 2006) ¶ 3 (available on this court's CM/ECF system as document number 1 of the case file). Judge Ezra ruled that Williams could not be personally liable under section 378-2(2) and that Lavarias had not shown that Williams had aided or abetted discrimination in violation of section 378-2(3), which would have allowed for individual liability.  See Lavarias, 2006 WL 3422256 at *2.  The Lavarias decision expressly recognized that Judge Seabright and Judge King had reached the opposite result, but said that Judge Ezra was "in agreement with Judge Mollway."  Lavarias acknowledged that, two years earlier, in his White ruling, Judge Ezra had similarly "concurred with Judge Mollway in the Luzon v. Atlas case, finding that Haw. Rev. Stat. Chap. 378 does not impose individual liability (other than in section 378-2(3), which has a provision for aiding and abetting)."  Id. n.2.

In December 2006, Judge Kay agreed with Judge Seabright's Sherez decision.  See Hale, 468 F. Supp. 2d at 1227-28.  Judge Kay was "persuaded by the broader and more direct reading of the statute that includes individual agents without employees as employers."  Id. at 1227.  Judge Kay analyzed the legislative history of chapter 378, noting that it contained "no indication that the Hawaii legislature ever intended to exclude

individual agents from the definition of the term 'employer.'"

Id. at 1228.  Specifically, Judge Kay held:

> It is also useful to examine the legislative history of the definition of "employer."  The term "employer" was originally defined by Act 44 of the 1964 Hawaii Session Laws, 1964 Haw. Sess. Laws 44 § 2A ("Act 44"), as "any person having one or more persons in his employment, and includes any person acting as an agent of an employer, directly or indirectly."  It is clear from the original definition that the phrase "having one or more persons" does not modify or limit the term "agent."  Rather, the term "employer" expansively includes "any person" that is an agent.  When the definition was amended to its current form in 1981, both the House and Senate Standing Committee Reports explained that the purpose of the amendment was solely to extend liability to state and county governments.  There is no mention of an intent to suddenly immunize individual agents from liability.  See Comm. Rep. No. 549, Reg. Sess. (House Journal 1981); Comm. Rep. No. 653, Reg. Sess. (Senate Journal 1981).  After combing through the entire legislative history of this statute, the Court finds no indication that the Hawaii legislature ever intended to exclude individual agents from the definition of the term "employer."

> Furthermore, a pertinent Hawaii state ruling supports the conclusion that an individual without employees may be liable as an agent of his employer pursuant to Section 378(2).  In Steinberg v. Hoshijo, the Hawaii Supreme Court upheld the HCRC's finding that a doctor sexually harassed a medical assistant in violation of H.R.S. 378-2(1)(A).  88 Hawai'i 10, 17-19, 960 P.2d 1218 (1998).  Significantly, the charge was not pursued under the aid and abet provision.  The court appears to assume, as did the parties, that the defendant doctor was "an agent of the Clinic and therefore an 'employer' as defined

16

> by HRS § 378-1." <u>Id.</u> at 18 n.10, 960 P.2d
> 1218.  As noted previously by this Court and
> Judge King, this conclusion comports with
> other HCRC findings that have held individual
> employees jointly and severally liable for
> damages arising out of harassment.  <u>Harrell</u>,
> Civ. No. 99-00924 ACK at 22; <u>Black</u>, 112 F.
> Supp. 2d at 1056-57 (citing <u>Tseu v.
> Cederquist, Inc</u>., No. 95-001-E-R-S (HCRC June
> 28, 1996); <u>Santos v. Niimi</u>, No. 92-001-E-SH
> (HCRC Jan. 25, 1993)).

<u>Hale</u>, 468 F. Supp. 2d at 1228.  Judge Kay recently reiterated

this holding in <u>U.S. ex rel. Lockyer</u>, 490 F. Supp. 2d at 1087,

when he determined that there is individual liability under the

Hawaii Whistleblower's Protection Act, Haw. Rev. Stat. § 378-62,

under what he called the "nearly identical" definition of

"employer" in section 378-61.

This court remains unconvinced that Gonsalves may be

held individually liable under section 378-2(1) and section 378-

2(2).  Nothing in the definition of "employer" in section 378-1

or its legislative history indicates that the term "employer" was

intended to include individuals who do not employ others.  To be

an "employer" as defined in section 378-1, an "agent" must have

"one or more employees."  <u>See</u> <u>Maizner</u>, 405 F. Supp. 2d 1225 at

1235-37.

The legislative history of section 378-2 does not

countermand the statutory definition.  As Judge Kay notes in

<u>Hale</u>, "employer" was originally defined as "any person having one

or more persons in his employment, and includes any person acting

as an agent of an employer, directly or indirectly."  Judge Kay concluded that this original definition of "employer" supports the proposition that an "employee" may be liable as an "agent" of the employer.  <u>Hale</u>, 468 F. Supp. 2d at 1228.  This judge submits that such a reading would distort the statutory language.

### *"Having One or More Employees"* ### Restricts the Definition of "Employer."

There are two major problems with that reading.  First, it ignores the restrictive nature of the words "having one or more employees."  As this judge discussed in <u>Maizner</u>, those words are not gratuitously descriptive.  Those words set forth a fundamental requirement that cannot be ignored.  Those words state what kind of person can qualify as an employer, and no one can be an employer without satisfying that requirement.  An employer is not any person.  An employer is only a person with employees.

### *"Including" and "Includes" Do Not Introduce Alternatives.*

Second, reading "employer" to cover an individual employee who himself employs no one requires construing the word "including" in the present version of the statute (or the word "includes" in the original version of the statute) as providing not for something contained in the category of a person having one or more employees, but instead as providing for something entirely outside of that category.  Indeed, that reading provides that what is "included" be the very opposite of the category in

which it is purportedly included!  The original version of the statute, which influenced Judge Kay, stated that an "employer" was "any person having one or more persons in his employment, and includes any person acting as an agent of an employer, directly or indirectly."  Only by reading "and includes" to mean "or in the alternative" can one obtain a definition that covers as an "employer" both "any person having one or more persons in his employment" and "any person acting as an agent of an employer" without regard to whether that "agent" has one or more employees.  This judge, by contrast, reads the definition of "employer" to "include" only an agent who falls within the category of "any person having one or more persons in his employment."

It is perhaps easier to see the problem with reading "includes" to mean "or in the alternative" if we use a very simple, everyday example that is grammatically analogous to the original version of the statutory definition.  Suppose the word "boy" were plugged into the grammatical construction used in the original version of section 378-1, which defined "employer."  That original version stated that an "employer" was "any person having one or more persons in his employment, and includes any person acting as an agent of an employer."  If an analogous grammatical construction were used to define "boy," one might say that a "boy" was "any male having an age of 18 years or less, and includes any person acting as the father of a boy."  In this

19

judge's reading of the definition, only a "father" having "an age of 18 years or less" could qualify as a "boy."  Thus, an 18-year-old father with an infant son would fit the definition of "boy."  But if "includes" is read to mean "or in the alternative," then a 50-year-old father of a 15-year-old boy is "included" in the definition of "boy."  That is because, under such a reading of "includes," the "father" need not also be a member of the category of "any male having an age of 18 years or less."

To take the example one step further, we could define "boy" to mean "any male being 18 years or less in age, and includes any person acting as the parent of a boy."  By this judge's reasoning, any "parent" would have to be a "male having an age of 18 years or less."  But if "includes" means "or in the alternative," then a parent who was a mother of a boy could herself qualify as a "boy."  Just as any "father" or "parent" who is "included" in the definition of "boy" must be a male 18 years or younger, any "agent" included in the definition of "employer" must have one or more employees.  This judge submits that the Hawaii legislature cannot have intended to transmute the little word "includes" so that it provided for something as nonsensical as the very opposite of the category in which an "agent" is included.

In Maizner, this judge noted that the word "including" in the present version of the statute introduces not only an "agent" of an employer but also the State and the State's

20

political subdivisions as examples of "any person having one or more employees."  This judge said,

> It makes no sense to treat "including" as introducing examples of "any person having one or more employees" with respect to "the State or any of its political subdivisions," but then to treat "including" as introducing an example of something in addition to "any person having one or more employees" with respect to "any agent of such person."

405 F. Supp. 2d at 1235.  This judge adds here that treating "includes" or "including" as introducing something additional or an alternative would also run counter to the use of those words in other definitions contained in section 378-1, which defines "employer."

Section 378-1, for instance, uses "include" and "includes" to introduce examples, not additions or alternatives, in the definitions of "because of sex" and "being regarded as having such an impairment."  Thus, those terms are defined as follows:

> "Because of sex" shall **include,** but is not limited to, because of pregnancy, childbirth, or related medical conditions, and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, **including** receipt of benefits under fringe benefit programs, as other individuals not so affected but similar in their ability or inability to work.

> "Being regarded as having such an impairment" **includes** but is not limited to employer consideration of an individual's genetic information, **including** genetic

21

> information of any family member of an
> individual, or the individual's refusal to
> submit to a genetic test as a condition of
> initial or continued employment.

Haw. Rev. Stat. § 378-1 (emphasis added).

Similarly, section 378-1 uses "includes" to introduce examples, not additions or alternatives, in the definition of "person," which means "one or more individuals, and **includes**, but is not limited to, partnerships, associations, or corporations, legal representatives, trustees, trustees in bankruptcy, receivers, or the State of any of its political subdivisions." Haw. Rev. Stat. § 378-1 (emphasis added).  Reading "including" in the definition of "employer" as introducing additions or alternatives thus would run counter not only to the ordinary meaning of "includes" and to the way it is used with respect to the part of the definition of "employer" that refers to "the State or any of its political subdivisions," it would also run counter to the way the terms "includes" and "including" are used in other definitions in section 378-1.  This court sees no reason to give the word "including" an idiosyncratic meaning with respect to the definition of "employer" that would be totally at odds with the ordinary meaning given to that term over and over in other parts of section 378-1.

Moreover, construing "includes" and "including" in the normal sense as requiring any "agent" to also have employees would be entirely consistent with the Ninth Circuit's

construction of "agent" in Title VII's analogous definition of "employer." Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). The Ninth Circuit has determined that an individual cannot be liable for a Title VII violation. See, e.g., Miller, 991 F.2d at 587-88.

The court notes further that, even while relying on the Hawaii Supreme Court's decision in Steinberg, Judge Kay acknowledges that "[p]resently, no state law precedent speaks directly to the issue of whether an individual may be liable under sections 378-2(1) or 378-2(2)." Hale, 468 F. Supp. 2d at 1227. Although this judge has read her colleagues' analyses of the issue with intense interest and finds them helpful, she is so far not persuaded to change her mind. Her view remains that any "agent" sued under section 378-2 as an "employer" must itself have one or more employees. Thus, Company A might employ a plaintiff who was trained or supervised by Company B, which was, in turn, retained by Company A to train or supervise employees. The plaintiff, upon establishing that Company B acted as Company A's agent, could sue Company B but could not bring a claim under section 378-2(1) or section 378-2(2) against an individual employed by either Company A or Company B. Similarly, Company C

might hire an employment agency, Company D, to provide Company C with temporary workers.  If Company D refused to send women to work at Company C, Company D might be liable under section 378-2(1).

### *"Agent" Is Not Defined by Statute.*

There is yet another problem with permitting liability against an individual agent with no employees.  That additional problem is a practical, rather than grammatical, one.  Reading section 378-2(1) or section 378-2(2) as permitting claims against individuals will require the court to, in effect, legislate. Chapter 378 does not define "agent."  This judge posits that the reason there is no such definition is that "agent" was intended only as an example of an "employer," not as a separate category. Had it been a separate category distinct from "any person having one or more employees," then the legislature presumably would have defined it.

A court defining "agent" will have no statutory guidance in deciding which individual qualifies as an "agent" who can be individually sued under section 378-2.  Is an agent only someone with supervisory power over a claimant?  Must an agent hold a high enough position with an employer that the agent could be said to bind the employer?  A court making such decisions would, in essence, be legislating.

In determining that an individual is liable under section 378-2(1) or section 378-2(2), a court would be determining that the law places the burden of litigation on individuals.  Imagine a supervisor who decides to hire a woman over a man because the supervisor thought that the woman had a better interview and would fit into the workplace better than the man even if the man had a slightly better resume.  The supervisor, despite having based the hiring decision on legitimate criteria, might be sued by the unsuccessful male candidate for gender discrimination.  A company might or might not pay for an attorney to defend the supervisor from claims under section 378-2(1).  Not all companies are obligated to provide a defense.  Holding that individuals may be liable under sections 378-2(1) and 378-2(2) not only subjects actual discriminators to liability, it could also subject wholly innocent individuals to the burdens of litigation.  It is not at all clear to this court that Hawaii's legislature decided to impose such a burden on individuals.

This court notes that Judges Kay, Seabright, and King issued their rulings favoring individual liability in cases involving employers in supervisory positions.  See U.S. ex rel. Lockyer, 490 F. Supp. 2d at 1088 (individual defendant was the plaintiff's supervisor); Hale, 468 F. Supp. 2d at 1215 (individual defendant was the plaintiff's supervisor); Sherez,

25

396 F. Supp. 2d at 1148 (individual defendant allegedly established a discriminatory policy at a Hawaii public high school); <u>Black</u>, 112 F. Supp. 2d at 1056-57 (individual defendant was Michael Nakamura, the former Chief of Police).[3]  Under their reasoning, an office manager of a law firm might be an agent of the law firm who could be individually liable for taking an adverse employment action based on some impermissible reason such as a person's race.

But not all employment discrimination claims cognizable under section 378-2 involve adverse employment action claims. Individuals far down in an employer's hierarchy may create a hostile work environment, which is equally actionable under section 378-2.  Suppose a long-time mailroom employee at a large company made inappropriate sexual comments to a newly hired female executive.  Would the mailroom employee fit a judicially created definition of "agent" such that the individual could be sued under section 378-2(1) or section 378-2(2)?  Would the mail clerk's liability contrast with that of an executive at the company who took no adverse employment action but made exactly the same sexual comments to the new hire?  In other words, defining "agent" could conceivably lead to a situation in which

---

[3] Plaintiff's trial brief in <u>Sherez</u> indicates that the individual defendant in that case was the vice principal of the high school.  <u>See</u> Plaintiff Robert Sherez's Trial Brief, Civ. No. 04-00390 JMS/KSC (Mar. 13, 2007) at 3 (available as document 175 in the electronic file available on this court's CM/ECF system).

26

only certain individuals would be liable under section 378-2(1) or section 378-2(2) for the same conduct, and the distinction would depend not on statutory differences, but on judicial interpolations providing a definition of "agent."

In a two-person company with one person acting as the president and sole shareholder and the other person as an assistant, it might be fairly easy to say that the president and sole shareholder is also an agent of the company.  However, in a large bank, it might be difficult to determine if an assistant manager of accounts was an agent of the bank for all purposes. Although the assistant manager would be authorized by the bank to make decisions relating to accounts, that manager might have no authorization to make decisions relating to loans or to employment terms.  Without a statutory definition of "agent," a court would be left to guess what the legislature intended by that term.  If "agent" was defined as a person authorized to act on behalf of a company, it might lead to situations in which the assistant bank manager described above could be individually liable for suspending a teller based on race but that same manager might not be individually liable for creating a hostile work environment by using racial slurs in referring to the same teller.  On the one hand, the bank manager might be said to be acting on the bank's behalf in suspending the teller, but might

27

not be said to be acting on the bank's behalf in using the racial slurs.

Even in the hypothetical two-person company, an agent is not necessarily the boss of the company. Suppose a boss wanted to hire a replacement for a retiring secretary and left it to the secretary to interview and select the replacement. The secretary would arguably be the "agent" of the company and might be sued for alleged discrimination in hiring.

The matter of agency is further complicated if a plaintiff sues a peer. A senior vice president of a large company might sue another senior vice president, for instance. There is no power imbalance, but the defendant might nevertheless be accused of having created a hostile work environment without any superior's knowledge. Is the senior vice president an "agent"? A court should not be the entity determining what the term "agent" in section 378-1 means.

The matter is particularly complicated in the present case. Gonsalves, a police commissioner, was in the minority at the commission in complaining about Lum. Can an employee who is dissenting be an agent of an employer just by virtue of the employee's job? Thus, for example, one could imagine a case in which the head of a city department fired an employee on the mayor's direction. Would that department head risk liability as an "agent" of the city solely because the person was a department

28

head and without regard for the person's private views?  What, if any, defenses might be available under the law to such a person, and who would fashion such defenses?

The above questions pose practical problems if courts take on the task of defining an "agent" for purposes of section 378-2.  In ruling that "agent" as used in section 378-1 does not make people individually liable for violations of section 378-2(1) or section 378-2(2), this court, far from being motivated by a bias toward or against any party or category, is deciding that the legislature did not intend for a court to add a definition.  In section 378-1, the legislature defined a host of terms.  It did not define "agent" because that term was only an illustration, not a free-standing category.  Had the legislature intended that individuals be liable under section 378-2(1) or section 378-2(2), it could have easily said so by defining "agent" in section 378-1.

Sam Teague, Ltd. v. Hawaii Civil Rights Commission, 89 Haw. 269, 971 P.2d 1104 (1999), cited by Lum at the hearing on the present motion, is not authority for the proposition that individuals are liable as "agents" of the employer.  This judge discussed this case in Maizner, 405 F. Supp. 2d at 1234 n.3.  In Sam Teague, the Hawaii Supreme Court recognized that the Hawaii Civil Rights Commission had allowed a claim against the president and sole shareholder of a two-person company on the ground that

the individual was acting as an agent of a person having one or
more employees.  However, the Hawaii Supreme Court did not state
that such a claim was cognizable.  The issue before the court had
to do with whether the claim had been timely asserted, and the
court appears to have accepted the Hawaii Civil Rights
Commission's position as to individual liability for purposes of
deciding the limitation issue.  It is not at all clear that the
cognizability of a claim against an individual was even raised
before either the Hawaii Civil Rights Commission or the Hawaii
Supreme Court, and the Hawaii Supreme Court was certainly under
no obligation to itself raise and decide the issue.

        Gonsalves is not individually liable for creating a
hostile work environment in violation of section 378-2(1)(A).
First, as discussed above, this court rules that there is no
individual liability under that section.  Second, even if there
were such individual liability, Lum does not meet his burden of
showing that Gonsalves was acting as an agent of Lum's employer
when Gonsalves took his allegedly discriminatory actions.

        There is no evidence that Gonsalves employed anyone.
Gonsalves was a member of the police commission that selected Lum
as the Chief of Police.  See, e.g., Ex. FF (Letter from Victor
Punua to K.C. Lum) (informing Lum that the commission would
select the next Chief of Police on a certain date).  Nor is there
evidence that Gonsalves acted as anyone's agent in using the term

30

"Hop Sing" or in taking any other action relating to the voiding of Lum's contract.  Lum does not dispute that Gonsalves played no role in the actual decision to remove him or in Lum's decision to resign.  See Gonsalves's Concise Statement (Aug. 1, 2007) ¶ 29 (asserting that Gonsalves played no role in the Kauai County's decision to remove Lum or Lum's decision to resign); Lum's Concise Statement ¶ 29 (disputing only who decided to remove Lum--Tresler, rather than the County of Kauai--and stating that Lum resigned because there was no lieutenant's position); Local Rule 56.1(g) ("For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.").  Finally, as discussed in the section below on § 1981 liability, Lum fails to raise a genuine issue of fact as to whether there was a hostile work environment at all.

> b.   Lum Fails to Allege a Viable Claim that He Was Retaliated Against in Violation of Section 378-2(2).

Paragraph 55 of the Fourth Amended Complaint alleges unlawful retaliation.  To the extent the First Cause of Action asserts such retaliation in violation of section 378-2(2) of the Hawaii Revised Statutes, it fails to allege a viable claim.  Section 378-2(2) makes it unlawful for "any employer . . . to discharge, expel, or otherwise discriminate against any

31

individual because that individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part."

As discussed above, there is no individual liability for violations of section 378-2(2).[4]  Moreover, the alleged retaliation appears to be related, at least in part, to displeasure with Lum's handling of other officers' misconduct in the Fanta-See Express incident, discussed in more detail by this court in an earlier order.  See Fourth Amended Complaint ¶ 20. Such alleged retaliation would not be actionable under section 378-2(2), as Lum conceded at the hearing that the Fanta-See Express incident was unrelated to discriminatory practices forbidden under chapter 378 of the Hawaii Revised Statutes.

Lum appears to be asserting that he was retaliated against because he filed a complaint with the HCRC on April 7, 2005, complaining about the "Hop Sing" email sent by Gonsalves. See Fourth Amended Complaint ¶ 32.  However, Lum fails to show that Gonsalves retaliated against him at all.  Paragraphs 47 to 49 of the Fourth Amended Complaint allege that, based on a

_____

[4] On October 30, 2007, Judge Ezra filed an amended order in Black v. Correa, 2007 WL 3195122, *18 (D. Haw. Oct. 30, 2007).  In that order, Judge Ezra states that this judge has "conclusively determined that Haw. Rev. Stat. § 378-2(2) does not impose individual liability against those who discriminate." This judge does not consider her ruling "conclusive," as only the Hawaii Supreme Court can conclusively make such a determination.

hearing officer's decision, the County of Kauai Board of Ethics advised the Kauai County Council to cancel Lum's contract; that the Kauai County Council accepted and ratified the County of Kauai Board of Ethic's recommendation, forwarding its decision to the Kauai County's Director of Finance, Michael H. Tresler; and that Tresler cancelled Lum's employment contract because it was voidable.  At most, the Fourth Amended Complaint alleges that the Kauai County Council acted based on "the personal relationship Gonsalves has with several members of the Kauai County Council." Fourth Amended Complaint ¶ 51.  A "personal relationship" with members of the Kauai County Council is insufficient to make Gonsalves an "employer" individually liable under section 378-2(2), especially when, as discussed above, Lum does not dispute that Gonsalves played no role in the decision to remove him.

Lum tries to bolster his retaliation claim by pointing to two complaints Gonsalves filed concerning Lum, one with the County of Kauai Board of Ethics and one with the State of Hawaii's Office of the Attorney General.  See Exs. GG and HH. Even assuming that Gonsalves was acting in his capacity as a police commissioner when he filed those complaints, Lum fails to show that the filing of the complaints involved actionable retaliation.  As noted above, the record does not demonstrate that Gonsalves was Lum's employer such that he could be liable under section 378-2(2).  On an even more fundamental level,

however, Lum fails to allege actionable retaliation.  In <u>Schefke</u>, 96 Haw. at 426, 32 P.3d at 70, the Hawaii Supreme Court made it clear that an actionable retaliation claim under section 378-2(2) requires an adverse employment action.

Gonsalves's complaints are not adverse employment actions actionable under section 378-2(2).  <u>See</u> <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998) (noting in the Title VII context that a "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); <u>accord</u> <u>Shoppe v. Gucci Am., Inc.</u>, 94 Haw. 368, 378, 14 P.3d 1049, 1059 (2000) (noting that an adverse employment action would include a discharge).  A complaint does not change employment status.  Even if a ruling on a complaint ultimately constitutes an adverse employment action, it is the ruling, not the complaint, that so qualifies.  There is no evidence indicating that Gonsalves issued any ruling adverse to Lum.  Gonsalves's October 2005 request for sanctions against Lum, <u>see</u> Ex. K, similarly fails to qualify as an adverse employment action for purposes of section 378-2(2), as nothing

adverse resulted.  Accordingly, Lum's section 378-2(2) claims

fail.[5]

        c.    Lum Fails to Allege a Viable Claim Under Section 378-2(3).

To the extent Lum claims a violation of section

378-2(3) of the Hawaii Revised Statutes, that claim fails.

Section 378-2(3) allows claims against individuals who are not

---

[5] Lum argues that, in 2006, the Supreme Court abandoned the adverse employment action requirement for retaliation cases. See Burlington N. & Santa Fe RR. Co. v. White, 126 S. Ct. 2405 (2006).  Burlinton Northern clarified that the substantive Title VII "adverse employment action" requirement, e.g. a termination, demotion, etc., was not required for Title VII retaliation claims.  Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  126 S. Ct. at 2415.  The Supreme Court provided some examples that might not be "adverse employment actions" for substantive Title VII purposes, but would qualify as sufficient bases for its retaliatory provisions.  For example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children."  Id. at 2415.  Also, "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight.  But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."  Id. at 2415-16.  Burlington Northern is distinguishable because it pertains to Title VII claims, not claims under section 378-2(2).  Although Schefke relied on now-overruled Title VII retaliation cases in determining that section 378-2(2) claims require adverse employment actions, Schefke is still binding on this court, as the Hawaii Supreme Court was interpreting Hawaii law.  Even if the Hawaii Supreme Court were to revisit the issue and determine that an adverse employment action is now unnecessary for claims under section 378-2(2), Gonsalves's claims would fail because, as an individual, he was not Lum's employer.

employers if the individuals "aid, abet, incite, compel, or coerce" discrimination.  Haw. Rev. Stat. § 378-2(3).  Lum does not clearly alleged facts describing how Gonsalves aided, abetted, incited, compelled, or coerced discrimination.  At the hearing on Gonsalves's motion, Lum stated that page 85 of Miles Tanabe's August 2, 2007, deposition, Ex. O, was evidence that Lum aided or abetted Miles Tanabe.  However, that deposition excerpt merely indicates that Tanabe spoke to Gonsalves "about Chief Lum during his tenure as the interim chief."  Id.  Lum provides no evidence indicating that this conversation pertained to any discriminatory conduct.

While this court draws all reasonable inferences in Lum's favor on this motion, such inferences must be grounded in the evidence with which Lum proposes to meet his burden of proof. There is absolutely no evidence that any communication by Gonsalves led anyone else to even complain about Lum, much less make a negative employment decision.  Certainly there is no evidence that Lum aided, abetted, incited, compelled, or coerced anyone else to discriminate.  For all the court knows, Gonsalves and Tanabe may have discussed only Lum's attendance record or report-writing ability.  On this motion, it was incumbent on Lum to make some showing of how he will meet his burden of establishing that Gonsalves aided, abetted, incited, compelled, or coerced others in prohibited discrimination.  This court had

no duty to search the voluminous record submitted by Lum without corresponding pinpoint citations in either his Opposition or his Concise Statement.  See Local Rule 56.1(f).

>           3.    42 U.S.C. § 1981.

The Fourth Amended Complaint's First and Second Causes of Action also assert that Gonsalves violated 42 U.S.C. § 1981, which states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

While not liable under Title VII, "individuals may be held liable under §§ 1981 and 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment."  Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004).  Lum is arguing that Gonsalves violated § 1981 by calling Lum "Hop Sing" in an October 2004 email.  See Ex. G to Gonsalves's motion.[6]  Gonsalves moves for summary

---

[6] At the hearing, Lum clarified that his race discrimination claims are not based on Gonsalves's earlier alleged use of the name "Hop Sing" for Lum from 1988 to 1989. See Lum Depo. at 123.  Lum also does not dispute that his nickname while he was a Kauai Police Department officer was "Hop Sing."  See Lum's Counter-Concise Statement of Facts (Oct. 5, 2007) ¶¶ 19-20.

judgment, arguing that this isolated comment did not create a hostile work environment.  This court agrees.

Lum's hostile work environment claim requires his workplace to have been permeated with discriminatory intimidation, ridicule, and/or insult sufficiently severe or pervasive to alter the conditions of Lum's employment and create an abusive or hostile working environment.  See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998); El-Hakem v. BJY Inc., 415 F.3d 1068, 1073 (9th Cir. 2005) (noting that the same standard applies to both § 1981 and Title VII claims), cert. denied, 547 U.S. 1004 (2006).  The objective severity "should be judged from the perspective of a reasonable person in the plaintiff's position."  Oncale, 523 U.S. at 81.  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.  Clark County Sch. Dist. v. Breeden, 121 S. Ct. 1508, 1510 (2001).

> Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Id. (internal quotations omitted) (noting that an isolated incident involving a statement that "making love to you is like

38

making love to the Grand Canyon" was insufficient to violate Title VII).

The single email sent by Gonsalves to someone other than Lum, even if Lum later learned that the email referred to Lum as "Hop Sing," is insufficient to have caused Lum's workplace to have been permeated with discriminatory intimidation, ridicule, and/or insult sufficiently severe or pervasive to alter the conditions of Lum's employment and create an abusive or hostile working environment.  See Oncale, 523 U.S. at 78.  None of the cases cited by Lum indicates that a single stray remark can form the basis of a viable hostile work environment claim. Lum himself "does not contend that the term 'Hop Sing' by itself constitutes a hostile work environment."  See Opposition (Oct. 4, 2007) at 27.  Instead, Lum says that "it constitutes evidence of a racial bias by Gonsalves against him."  See Opposition (Oct. 4, 2007) at 27.  However, a racial bias is not itself actionable under § 1981.

Lum seeks to bolster his § 1981 claim by saying that Gonsalves not only sent the "Hop Sing" email but also retaliated against him based on his race by filing complaints against him. But the complaints filed by Gonsalves were not "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  See Burlington, 126 S. Ct. at 2409.

There is no dispute that, after Lum complained to the Mayor of Kauai about the "Hop Sing" email, Gonsalves filed a complaint with the County of Kauai Board of Ethics and a complaint with the State of Hawaii Attorney General's office. The complaints alleged that the selection process for the Chief of Police was irregular, as other members of the police commission had predetermined that Lum would be chosen.  Gonsalves also complained that information regarding Lum's handling of the Fanta-See Express incident--information that, while not suggesting illegal activity by Lum, arguably reflected on his administrative ability--was omitted from an information packet for the meeting at which Lum was selected as Chief of Police. See Exs. GG and HH.  Both complaints accuse other police commissioners of possible improprieties.  While Lum is the subject of the alleged improprieties, he himself is not accused of having acted improperly in the selection process.  As Gonsalves's complaints were neither aimed at Lum nor even related to race discrimination, the complaints could not be said to have been capable of dissuading a reasonable employee from making or supporting a charge of discrimination.  Lum simply does not show that the complaints, even combined with the "Hop Sing" email, are actionable under § 1981.  To hold otherwise would require a court to infer that every negative remark was illegally discriminatory. Such an inference would silence even legitimate criticism.

40

B.    The Third Claim for Relief (§ 1985).

Lum also asserts that Gonsalves violated 42 U.S.C. § 1985 by conspiring to deprive him of rights because of Lum's race.  See Fourth Amended Complaint, Third Claim for Relief (May 8, 2007).  Lum's Complaint does not identify which subsections of § 1985 he is claiming Gonsalves violated.  At the hearing, Lum clarified that he is asserting the same violations of § 1985 by Gonsalves as he asserted by Tresler in an earlier motion.  Lum is therefore asserting violations of the second clause of § 1985(2) and the first and second clauses of § 1985(3).

The second clause of § 1985(2) provides for a claim if:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

The first clause of § 1985(3) prohibits private conspiracies to deny equal protection of the laws.

The second clause of § 1985(3) prohibits conspiracies "for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."  As this court ruled earlier with respect to Tresler's motion, the second clause of § 1985(3) is simply

41

inapplicable to the present case, as the record does not indicate that anyone prevented or hindered "the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."

Gonsalves has moved for summary judgment on Lum's § 1985 claims, arguing that Lum has failed to present any evidence demonstrating the existence of a conspiracy, any actionable conduct, and any acts in furtherance of the conspiracy.  This court agrees.  Even drawing all inferences in Lum's favor, this court finds no evidence from which it could possibly infer that there was a "meeting of the minds" between Gonsalves and somebody else to discriminate against Lum because of Lum's race.  See, e.g., Caldeira v. County of Kauai, 866 F.2d 1175, 1181 (9th Cir. 1989) ("to prove a section 1985 conspiracy between a private party and the government under section 1983, the plaintiff must show an agreement or 'meeting of the minds' by the defendants to violate his constitutional rights").  In other words, Lum has failed to raise a genuine issue of fact as to whether the "purpose of the conspiracy was to deprive the plaintiff of equal protection, equal privileges and immunities, or to obstruct the course of justice in the state." Sykes v. State of Cal. (Dept. of Motor Vehicles), 497 F.2d 197, 200 (9th Cir. 1974).

At most, Lum has introduced evidence from which it might be inferred that Gonsalves was racially motivated in seeking to have Lum terminated as the Chief of Police. Lum has introduced evidence indicating that Tanabe and Scott Yagihara also wanted to have Lum terminated as the Chief of Police, and that Gonsalves and Tanabe "spoke" about Lum. Even drawing all inferences in Lum's favor, this evidence is insufficient to raise a genuine issue of fact as to whether Gonsalves and Tanabe and/or Yagihara conspired to have Lum terminated because of Lum's race There is no evidence of racial animus by Tanabe or Yagihara, who may have wanted Lum fired for reasons totally unrelated to any prohibited basis. Lum fails to introduce any evidence as to whether there was a "meeting of the minds" between or among these individuals to violate Lum's civil rights. Accordingly, Lum's claims under the second clause of § 1985(2) and the first clause of § 1985(3) fail.[7]

C.    The Fifth Claim for Relief.

The Fifth Claim for Relief asserts a violation of the Hawaii Whistleblowers' Protection Act, section 378-62 of the Hawaii Revised Statutes. Although the Fourth Amended Complaint does not clearly articulate the subsection of the statute

---

[7] Accordingly, the court need not reach the issue of whether Lum's § 1985 claims are barred by the intracorporate immunity doctrine, which states that a corporation cannot conspire with its own employees or agents. See, e.g., Schmitz v. Mars, Inc., 261 F. Supp. 2d 1226, 1234 (D. Or. 2003).

43

supposedly violated or the factual basis for the claim, page 37

of Lum's opposition clarifies that he is alleging a violation of

section 378-62(1)(A), which states:

> An employer shall not discharge, threaten, or
> otherwise discriminate against an employee
> regarding the employee's compensation, terms,
> conditions, location, or privileges of
> employment because:
>
> (1) The employee, or a person acting on
> behalf of the employee, reports or is about
> to report to the employer, or reports or is
> about to report to a public body, verbally or
> in writing, a violation or a suspected
> violation of:
>
> (A) A law, rule, ordinance, or
> regulation, adopted pursuant to law of this
> State, a political subdivision of this State,
> or the United States[.]

Page 37 of Lum's Opposition further clarifies:

> Lum contends that Gonsalves' retaliatory bias
> against Lum began from his blaming him for
> what happened to the five officers in the
> FantaSee Express case which he openly
> expressed during the application process.
> Moreover, Gonsalves efforts to sanction and
> remove Lum for supposed poor performance as
> discussed above supports Lum's claim that he
> was subject[ed] to reprisal by Gonsalves in
> violation of [section 378-62].

> Lum's section 378-62 claim fails for several reasons.

First, Lum fails to show that Gonsalves is an "employer" who can

be liable under that section.  Section 378-61 defines "employer"

as "a person who has one or more employees.  Employer includes an

agent of an employer or of the State or a political subdivision

of the State."  As explained earlier in this order in connection

44

with sections 378-2(1) and 378-2(2), this court does not read a

provision that "includes" an agent as an "employer" with "one or

more employees" as somehow giving rise to liability on the part

of an individual employing no one.  For the same reasons that

section 378-2(1) and section 378-2(2) do not impose individual

liability, this court rules that section 378-62 does not impose

individual liability.[8]  In this regard, this judge's

interpretation of whether an individual can be an "employer" for

purposes of section 378-61 differs from that of Judges Ezra and

Kay.

Judge Ezra only a few days ago addressed this very

issue in an amended order in Black v. Correa, Civ. No. 07-00299

DAE/LEK, 2007 WL 3195122 (D. Haw. Oct. 30, 2007).  Judge Ezra

ruled that an individual can be liable under section 378-62 as an

agent of an employer.  Id. at *18 to *20.  Judge Ezra noted that

his determination of individual liability under section 378-62

"might appear inconsistent with [his] reasoning in Lavarias and

---

[8] This court recognizes that, in Mock v. Castro, 105
Haw. 374, 98 P.3d 245 (2004), the Hawaii Supreme Court, in a
memorandum decision, reversed a directed verdict after a jury
trial in favor of an individual defendant on a section 378-62
claim, remanding that claim to the trial court.  Under Rule 35(c)
of the Hawaii Rules of Appellate Procedure, Mock may not be cited
and therefore has no precedential value.  In any event, the
Hawaii Supreme Court did not expressly examine in Mock whether an
individual can be liable under section 378-62.  Nor does this
court have any basis for concluding that the trial court actually
examined the issue of whether there is individual liability under
section 378-2.  The parties in Mock may not have raised the issue
and may have therefore waived it.

White," in which he held there was no individual liability under section 378-2(1) or section 378-2(2).  Id. at *19.  He nevertheless distinguished his earlier rulings based on the definitions of "employer," which he determined was broader under section 378-61, which governs the claim under section 378-62, than under 378-1, which governs claims under section 378-2.

Under section 378-61, "employer" is defined as "a person who has one or more employees.  Employer includes an agent of an employer or of the State or a political subdivision of the State."  Because the legislature chose to define "employer" in section 378-61 in two separate sentences, rather than in a single sentence as in section 378-1, Judge Ezra reasoned that the definition suggests an "'either/or' scenario."  Black, 2007 WL 3195122, *19.  That is, Judge Ezra views section 378-61 as imposing liability on either persons with one or more employees, or on agents of an employer.  Id.

This judge returns to her definition of "boy" to illustrate the problem with this reading.  Suppose, using the grammatical construction used in section 378-61 to define "employer," "boy" were defined as "a male who is 18 years old or less.  Boy includes a father of a boy."  Under Judge Ezra's "either/or" construction of that definition, the boy could be either "a male who is 18 years old or less" or "a father of a

46

boy."  Under that "either/or" construction, a 50-year-old father
of a 15-year-old male would meet the definition of "boy."

This court submits that the legislature's use of two
sentences, rather than one, does not indicate an intent to impose
individual liability.  Rather, the second sentence--"Employer
includes an agent of an employer"--merely provides an example of
what is included in the definition of employer, which is a person
with one or more employees.

This court agrees with Judge Kay that the definitions
of employer found in sections 378-1 and 378-62 are "nearly
identical."  See U.S. ex rel. Lockyer, 490 F. Supp. 2d at 1088.
This judge does not see the differences in syntax between the
definition of "employer" in section 378-1 and the definition of
"employer" in section 378-61 as signaling opposing legislative
intents.  Although this judge and Judge Kay reach different
conclusions, this judge and Judge Kay read section 378-1 as
consistent with section 378-61.  For the same reasons that this
judge rejects individual liability under section 378-2, this
court rules that there is no individual liability under section
378-62.

This judge recognizes that the restrictive nature of
the requirement of employees may not be as clear from a
grammatical standpoint in section 378-61 as it is in section 378-
1.  But the difference in clarity is a matter only of degree and
does not negate the need for contortions if one is to read

47

individuals as included in the definition of "employer" in section 378-61.  To find individuals covered under that definition, one must move the word "includes" and add the words "either" and "or," so that the definition provides that an "employer" includes "either" a person with employees "or" an agent.  This is an unwarranted rewriting of the definition that leads to the situation in which a person fits within both the definition of "employer" in section 378-61 and the definition of "employee" in section 378-61 for taking the exact same acts.  Under Judge Ezra's reasoning in <u>Black</u>, Chief Correa is both Sharon Black's employer and himself an employee.  This court posits that the legislature did not intend such a result.

Nothing in the legislative history of section 378-62 and of section 378-61 evidences any intent that the definition of "employer" in section 378-61 be read more broadly than the definition in section 378-1.  Breaking the definition of employer into two sentences does not, by itself, evidence any such intent. Such an intent appears particularly unlikely because the definitions are intended to apply to what, in some instances, may be duplicative claims under section 378-2(2) and section 378-62. In Judge Ezra's <u>Black</u> case, for example, the plaintiff asserted that she was retaliated against "for exercising her rights to testify in a court of law from past sexual harassment."  <u>Black</u>, 2007 WL 3195122, *16.  That conduct could be said to violate of both section 378-2(2) (prohibiting employers from discriminating

48

"against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part") and section 378-62 (prohibiting employers from discriminating against an employee because the employee "reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of . . . (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States").  It makes little sense to treat claims under section 378-2(2) differently from identical claims under section 378-62 just because the Hawaii legislature chose to break the definition of "employer" into two sentences in section 378-61.

The court notes that, in chapter 378 of the Hawaii Revised Statutes, the Hawaii legislature actually defines "employer" four different ways.  See Haw. Rev. Stat. § 378-1 (discriminatory practices) ("'Employer' means any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States."); Haw. Rev. Stat. § 378-26 (lie detector tests) ("'Employer' includes any individual, partnership, association, corporation, business trust, legal representative, receiver, trustee, or successor of any of the same, or any organized group of persons, acting directly or

49

indirectly in the interest of any employer in relation to an employee."); Haw. Rev. Stat. § 378-31 (unlawful suspension or discharge) ("'Employer' includes any individual, partnership, association, joint-stock company, trust, corporation, the personal representative of the estate of any of the same, employing any persons, but shall not include the State or any political subdivision thereof or the United States."); and Haw. Rev. Stat. § 378-61 ("'Employer' means a person who has one or more employees. Employer includes an agent of an employer or of the State or a political subdivision of the State.").  In two of the four definitions of "employer" in chapter 378, the legislature expressly included individuals in the definition. Because the legislature did not clearly indicate an intent to include individuals in the definition of "employer" in section 378-61, this court does not stretch to give that statute such a meaning.

Even if an individual could be liable as an "agent," Lum makes no showing that Gonsalves did act as an agent of Lum's employer.  Even if Gonsalves acted as such an agent in his capacity as a police commissioner, Lum identifies no actionable retaliation taken in that capacity.

To the extent Lum asserts that Gonsalves retaliated against him based on Lum's Fanta-See Express complaint, Lum demonstrates no viable section 378-62 claim.  Although Gonsalves voted against hiring Lum as interim Chief of Police, Gonsalves

50

was outvoted, and Lum was actually hired.  Similarly, although Gonsalves may have actively tried to remove Lum from his position as Chief of Police, Lum does not dispute that Gonsalves played no role in the actual decision to remove him.  As this court ruled in a previous order, that decision was based on a legitimate determination that Lum's contract was void.  Even assuming, as Lum contends, that Gonsalves initiated the complaint that ultimately led to Lum's termination by the County of Kauai or Tresler, Lum fails to raise a genuine issue of fact as to whether the termination (as opposed to Lum's complaint) was in retaliation for Lum's having "blown the whistle."  Lum simply fails to show that Lum lost his job in retaliation for whistleblowing activity.  See Crosby v. State Dept. of Budget & Fin., 76 Haw. 332, 342, 876 P.2d 1300, 1310 (1994) ("a causal connection between the alleged retaliation and the 'whistleblowing' is required").  Accordingly, summary judgment is granted in favor of Gonsalves on Lum's Fifth Claim for Relief.

V.        CONCLUSION.

        The court grants summary judgment in favor of Gonsalves.  No claims remain against Gonsalves.  This order leaves for further adjudication the First, Second, Third, and

Fifth Claims for relief, to the extent those claims are asserted against Defendants County of Kauai, Kauai County Council, and Bryan Baptiste.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 7, 2007.



　　　　　　　　　　　　　　　　　　 /s/ Susan Oki Mollway
　　　　　　　　　　　　　　　　　 Susan Oki Mollway
　　　　　　　　　　　　　　　　　 United States District Judge

**Lum v. Kauai County Council et al.**, **Civ. No. 06-00068 SOM/LEK**; ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT LEON GONSALVES, SR.